# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCIS C. MBEWE, #360922 | * |
| Plaintiff | * |
| v. | *    Civil Action No. JKB-15-3950 |
| LT. LIKEN,<br>C.O. II ZILER,<br>JOHN DOE 1-SERGEANT,[1]<br>LT. GORDON,<br>CASE MANAGER YATES,<br>JOHN DOE 2, SHIFT COMMANDER,<br>CORRECTIONAL OFFICERS AT<br>  WESTERN CORRECTIONAL[2]<br>  INSTITUTION, | * |
| Defendants | * |
| | *** |

## MEMORANDUM OPINION

Pending is Francis C. Mbewe's Complaint filed pursuant to 42 U.S.C. § 1983. Defendants Lt. Rodney Liken, CO II Bobby J. Ziler, Captain William F. Gordon, and Michael Yates,[3] by their counsel, have filed a motion to dismiss or, in the alternative, for summary judgment supported by declarations and exhibits.

The issues have been briefed, the matter is ripe for disposition, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2016). Defendants' motion, treated as a motion for summary judgment will be granted. Judgment will be entered in favor of defendants Liken, Ziler, Gordon, and Yates.

---

[1] Mbewe does not identify "John Doe 2, Shift Commander" and service has not been obtained on this individual. This defendant shall be dismissed from this proceeding in a separate order.

[2] Service has not been obtained on these defendants, who will be dismissed in a separate order.

[3] The Clerk will amend the docket to reflect defendants' full names.

## BACKGROUND

Mbewe is presently incarcerated at Patuxent Institution in Jessup, Maryland. Mbewe claims defendants violated his Eighth Amendment rights by failing to protect him from a serious risk of harm during the time he was an inmate at Western Correctional Institution ("WCI") in Cumberland, Maryland. Mbewe also alleges defendants were negligent in failing to perform their duties to protect him in violation of the Maryland Tort Claims Act ("MTCA"). As redress, he is seeking declaratory relief, compensatory damages of $50,000 against each defendant jointly and severally, a jury trial, and other relief the court deems just and proper.

Mbewe states that on April 15, 2014, at approximately 4:30 p.m. he was stabbed in his back and left leg by his cellmate Kristopher Madison at WCI. Mbewe claims that prior to the stabbing, he had submitted a request to defendants Gordon, Yates, and the "John Doe shift" to place him on protective custody, single-cell status because he was having ongoing problems with his cellmate, who called him a snitch. With his complaint, Mbewe filed a copy of a letter dated October 18, 2013, addressed to Liken, Yates, and/or "to whom it may concern" asking to be placed on protective custody because he feared that he would be harmed by other inmates. ECF 1-2 at pp. 4-7. Mbewe's letter states that on October 17, 2013, he had informed Ziler that he was having problems with his cellmate and needed to be moved because it was an emergency that could turn violent at any time. In that letter, Mbewe also stated that Ziler was aware that he had been assaulted in the shower on July 10, 2012, at Maryland Correctional Institution- Hagerstown ("MCIH") because he had been labeled a snitch. *Id.* After the assault in the shower, Mbewe was transferred to WCI. *Id.*

**DEFENDANTS' RESPONSE**

Protective custody ("PC") is a special housing status for inmates who require separation from the general prison population and/or protection for safety reasons. ECF No. 18-2 (Liken declaration). Lieutenant Rodney Liken attests that, in his opinion, placing an inmate in PC who does not meet the criteria could position that inmate to "wreak havoc on the PC population, which consists of inmates with verified threats on their lives" because an unqualified inmate in PC could serve as an agent for gangs or inmates who want to harm PC inmates. *Id.* Captain William Gordon attests that PC determinations are made collectively after review by administrative, case management, and unit team members. ECF No. 18-3 (Gordon declaration).

Liken states he met with Mbewe on August 23, 2013, in response to his informal complaint that he had been labeled "a snitch" and was in fear of his cellmate. ECF No. 18-2. Mbewe, who had been provided a different cellmate before the meeting, informed Liken that he did not have any issues with his new cellmate and felt safe. *Id.* ¶3. Liken gave Mbewe the opportunity to specify why he believed he was in danger and the names of the persons who were threatening him. *Id.* Mbewe refused to provide the information so his claims could not be substantiated. Liken therefore determined that Mbewe did not meet departmental criteria for PC assignment. *Id.* ¶ 5. Notably, Mbewe never informed Liken that he feared Kristopher Madison. *Id.* ¶¶ 3, 6.

Mbewe's October 18, 2013, letter makes no mention of Kristopher Madison. Neither Yates nor Gordon recalls seeing the letter prior to this lawsuit. ECF Nos. ECF 18-3 ¶ 4; ECF 18-4 ¶ 4. At the time Mbewe wrote the letter, he was housed in Cell #4-C-27. ECF No. 18-5 at p. 4. Kristopher Madison was not Mbewe's cellmate at that time. *Id.* at 9 (cell history).

Captain Gordon denies having any knowledge of any evidence other than Mbewe's allegations that he was in danger from prison gangs because he was labeled a snitch. ECF 18-3 ¶ 7. Gordon attests that inmates often allege they are being threatened by gang members to secure PC or single cell status, and as an experienced correctional officer, he found Mbewe's claims not credible. *Id.* Gordon states that when he has knowledge that an inmate is in danger from another inmate, he records it in his notes. Gordon states he has reviewed his notes and "can determine that I never had any knowledge that Mr. Mbewe was threatened with harm by inmate Kristopher Madison . . . prior to April 15, 2014." *Id.* ¶ 5.

Yates attests he has no recollection that Mbewe requested PC status. ECF No. 18-4. Yates notes, however, that if Mbewe had requested PC placement, the request would have been denied because PC is a last resort since it is reserved for the most vulnerable inmates at WCI. Yates explains that Department of Public Safety and Correctional Services (DPSCS) policy does not provide for PC assignment based solely on an inmate's "bare bones" assertion that gangs are threatening him for being a snitch. *Id*. ¶ 7. Further, Mbewe did not have an enemy situation that warranted PC placement. *Id*. ¶ 6. Yates attests Mbewe never told him that he feared Kristopher Madison. *Id*. at ¶ 8.

In his October 18, 2013, letter, Mbewe asserted that he had informed Ziler about his cellmate problems. ECF No. 1-2 at p. 4. Ziler attests he cannot recall Mbewe telling him this information. ECF 18-4. Further, Ziler has no recollection of Mbewe's allegation he was assaulted in the shower on July 10, 2012, at MCIH. *Id.*; *see also* ECF 18-5 at pp. 6-7. Further, there are no Use of Force or Serious Incident Reports involving Mbewe from July of 2012 at MCIH. ECF No. 18-7 (McNamee declaration).

4

Almost seven months after he wrote his October 18, 2013, letter, Mbewe was moved from Cell 4-A-12 to Cell 4-A-34 on April 15, 2014.  ECF No. 18-5 at p. 3.  That same day, Kristopher Madison stabbed Mbewe in Cell 4-A-34.  Once Mbewe informed Officer K. Bittner that "you gotta get me out of here, my cell buddy stabbed me," officers separated the two inmates without incident and escorted Mbewe to the medical office for treatment for a superficial laceration on his upper arm approximately 1 inch in length, a 16 inch laceration on the left side of his torso, and abrasions on his left elbow and shoulder.  There was no active bleeding.  Nurse Carla Buck cleaned and treated the wounds.  ECF No. 18-5 at pp. 10-13; ECF No.18-8.  After treatment, Mbewe was moved to another cell.  ECF No. 18-5 at pp. 3, 12.  Mbewe and Kristopher Madison were not verified enemies until after the stabbing.  ECF 18-5 at p. 14.  Kristopher Madison was not a verified member of the BGF gang at the time he stabbed Mbewe.  ECF 18-11 ¶¶ 3-4. (Emerick decl.).

No evidence indicates any defendant was personally involved in assigning Mbewe to a cell with Madison on April 15, 2014.  Liken was transferred from WCI to the Internal Affairs Division on October 7, 2013, long before the cell transfer and denies any involvement in the housing decision.  ECF No. 18-2 ¶ 8; ECF No. 18-9 (Fockler decl.).  Yates had not been Mbewe's case manager for more than a month at the time Mbewe was celled with Madison, and he denies having any personal involvement in Mbewe's housing transfer on that day.  ECF 18-4 ¶¶ 5, 9.  Gordon denies any personal involvement in the celling decision and states he was not working at WCI on April 15, 2014.  ECF No. 18-3 at 3 ¶ 8.  Ziler does not recall having any involvement in the decision to assign Mbewe to a cell with Madison on April 15, 2014.  ECF No. 18-6 ¶ 5.

On April 28, 2014, Mbewe filed ARP #WCI-0669-14, which raised a number of concerns involving an altercation that had taken place on April 15, 2014, before the stabbing and involving a different cellmate in a different cell, specifically Cell 4-A-12.  ECF 1-3 at pp. 5-6.  The ARP included the following statement: "While in cell 4-A-34 top bunk laying down, Plaintiff was stabbed and cut with a sharp homemade shank with a razor blade." ECF 1-3 at p. 6.[4]  In the ARP, Mbewe named several correctional officers and claimed he was "set up" to be attacked by Madison.  *Id*. at pp. 2-3.  None of those officers named in the ARP is named as a defendant in the instant proceeding.

On May 14, 2014, Mbewe's ARP was dismissed by the acting warden.  On July 10, 2014, the Commissioner dismissed his appeal.  The Inmate Grievance Office ("IGO") has no record of an appeal for the ARP.  ECF 18-10 (Neverdon Decl.).

**MOTION FOR SUMMARY JUDGMENT**

Defendants submit they are entitled to dismissal or summary judgment in their favor on several grounds, including lack of exhaustion and the lack of evidence as to a constitutional violation.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to

---

[4] In the ARP, it appears that Mbewe was moved to the cell with Madison after Mbewe had been involved in an altercation with another cellmate earlier that day.  In the earlier incident, Mbewe was viewed as the aggressor.  ECF 1-3 at p. 5.

6

the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*  "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party."  *Downing v. Baltimore City Bd. of School Comm'rs*, No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Defendants have filed copies of verified documents and declarations with their pleadings.  The court may consider a wider range of documents when it treats a motion to dismiss as a motion for summary judgment, which it may do pursuant to Federal Rule of Civil Procedure 12(d).  *See Syncrude Canada, Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013).  When the court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion."  *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012).  Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'"  *Walker v. Univ. of Md. Med. Sys. Corp.*, Civ. No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Though the court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d

253, 261 (4th Cir. 1998). Here, defendants designate their motion as a "motion to dismiss or, in the alternative, motion for summary judgment." Further, Mbewe was provided the opportunity to dispute these exhibits with verified exhibits and affidavits (ECF No. 19), but he has chosen not to do so. Thus, the Court deems it appropriate to treat defendants' motion, together with the exhibits and declarations, as a motion for summary judgment.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Defendants assert Mbewe has failed to exhaust his claims at the IGO level. The Prisoner Litigation Reform Act provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. As a prisoner, Mbewe is subject to the strict requirements of the exhaustion provisions. A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a

prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015).

Summary judgment must be granted in favor of defendants where, as here, defendants raise the affirmative defense and also prove that Mbewe has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216-17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). To the extent that Mbewe's summary reference to the April 15, 2014, stabbing demonstrates his attempt to initiate an ARP proceeding in regard to that incident, he does not dispute that he has failed to exhaust his administrative remedies, nor does he claim administrative remedies were unavailable to him. Thus, defendants are entitled to summary judgment as a matter of law. Moreover, even if Mbewe were to demonstrate administrative exhaustion, defendants are entitled to summary judgment in their favor for the reasons set forth below.

**II.     Failure to Protect**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). The right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm from other prisoners. *Id*. Being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses

against society,"' *id*. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To that end, prison officials are obligated to take reasonable measures to guarantee inmate safety. *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015).

For a prison official to be found liable under the Eighth Amendment, "the official [must know] of and disregard[ ] an excessive risk to inmate. . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Farmer,* 511 U.S. at 834, 837.

Objectively, the inmate "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk of either injury. *Danser*, 772 F.3d at 346–47. Subjectively, the inmate must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. Where prison officials responded reasonably to a risk, they may be found free of liability. *Id*. at 844. A prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence . . . ." *Makdessi*, 789 F.3d at 133.

Even when the facts are viewed in the light most favorable to Mbewe, and assuming his injuries were serious, defendants have provided uncontroverted, testamentary evidence and exhibits demonstrating they had no prior knowledge that Kristopher Madison posed a threat to

Mbewe and further demonstrating they were not personally involved in the determination to house Mbewe with Madison on April 15, 2014.

## CONCLUSION

For these reasons, the court will grant defendants Liken, Ziler, Gordon, and Yates's motion for summary judgment. Judgment shall be entered in favor of these defendants. The court declines to exercise supplemental jurisdiction over Mbewe's state claims. A separate order follows.

<u>Feb. 24, 2017</u>                                        <u>      /s/                                         </u>
Date                                                                James K. Bredar
                                                                    United States District Judge